## THE STATE OF KANSAS v. HUGH V. GAVIGAN.

FORGERY IN THIRD DEGREE; *Information.* An information charging a person with forgery in the third degree under § 139 of the crimes act, should name the particular person intended to be defrauded, if such person is known. If, however, the effect of the forgery will not necessarily defraud a particular person, but will defraud some one, a general allegation of intent to defraud must be made.

*Appeal from Cherokee District Court.*

ON April 26, 1886, there was filed in the district court of Cherokee county the following information, omitting caption, verification, and indorsements:

"In the name and by the authority of the state of Kansas,

I, C. O. Stockslager, county attorney in and for the county of Cherokee, in the state of Kansas, who prosecute for and on behalf of said state, in the district court of said district, sitting in and for the county of Cherokee, and duly empowered to inform of offenses committed within said county of Cherokee, come now here and give the court to understand and be informed that Hugh V. Gavigan and R. H. Lawton, at the county of Cherokee, in the state of Kansas aforesaid, and within the jurisdiction of this court, on or about the 22d day of April, 1884, then and there being, did then and there intentionally, unlawfully and feloniously forge and cause and procure to be forged a certain instrument in writing purporting to be the act of another, by which the interest of such other person was and purported to be transferred and affected, to wit: A certain deed of conveyance of land of that date, purporting to be the act of one Daniel Desmond, wherein and whereby there was and purported to be conveyed and transferred, for the consideration of five thousand and five hundred dollars, in said deed and instrument in writing expressed by the said Daniel Desmond, to one James Watson, a certain tract of land, to wit: The northwest quarter of section thirty-three, township thirty-two south, of range twenty-three, east of the sixth principal meridian, containing one hundred and sixty acres, according to the United States survey; that the name Daniel Desmond was then and there intentionally, unlawfully and feloniously signed and affixed, and caused and procured to be signed and affixed to the said pretended deed and instrument of writing, by said H. V. Gavigan and R. H. Lawton; that the said name Daniel Desmond, so signed and affixed to said deed and instrument in writing, caused and procured to be so signed and affixed thereto by the said H. V. Gavigan and R. H. Lawton, was a fictitious name, and the pretended name and signature of a person not then in existence; contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Kansas."

Trial at the April Term, 1886, commencing on July 19th. The State appeared by C. O. Stockslager, county attorney, and by Honorable S. B. Bradford, attorney general, and also by H. G. Webb; and the defendant H. V. Gavigan appeared in person, as also by his attorneys J. R. Hallowell and C. D. Ashley; the defendant R. H. Lawton not appearing, and has

subsequently deceased.  On July 22d, the jury returned a verdict of guilty against the defendant *H. V. Gavigan*, of forgery in the third degree, as charged in the . information. Thereupon he filed a motion to vacate and set aside the verdict, and also a motion in arrest of judgment, which, upon hearing, were overruled.  On July 31st, he was sentenced to confinement at hard labor in the penitentiary of the state for the term of three years; and judgment was rendered against him for the costs, taxed at $893.57.  He excepted to the rulings, sentence, and judgment of the court, and brings his case here.

*C. W. Blair, W. C. Perry, Johnson, Martin & Keeler*, and *C. D. Ashley*, for appellant.

*S. B. Bradford*, attorney general, and *C. O. Stockslager*, county attorney, for The State.

The opinion of the court was delivered by

HORTON, C. J.: The appellant was convicted of forgery in the third degree, and his punishment assessed at hard labor in the penitentiary for the period of three years.  Motions for a new trial and in arrest of judgment were made in the district court, which were by the court overruled.  This appeal is prosecuted.

The most important inquiry presented in the record, and one which goes to the foundation of the prosecution, is as to the sufficiency of the information.  It is said in the motion in arrest of judgment, that the facts stated in the information do not state a public offense.  In order to make the question fully understood we reproduce a portion of the information, which is as follows, after the usual formal parts:

"That H. V. Gavigan and R. H. Lawton, at the county of Cherokee, in the state of Kansas, on the 22d day of April, 1884, then and there being, did then and there intentionally, unlawfully and feloniously forge and cause and procure to be forged a certain instrument in writing purporting to be the act of another, by which the interest of such other person was and purported to be transferred and affected, to wit: A certain

deed of conveyance of land of that date, purporting to be the act of one Daniel Desmond, wherein and whereby there was and purported to be conveyed and transferred, for the consideration of five thousand and five hundred dollars, in said deed and instrument in writing expressed by the said Daniel Desmond, to one James Watson, a certain tract of land, to wit: The northwest quarter of section thirty-three, township thirty-two south, of range twenty-three, east of the sixth principal meridian, containing one hundred and sixty acres, according to the United States survey; that the name of Daniel Desmond was then and there intentionally, unlawfully and feloniously signed and affixed, and caused and procured to be signed and affixed to the said pretended deed and instrument of writing, by the said H. V. Gavigan and R. H. Lawton; that the said name, Daniel Desmond, . . . so signed and affixed to said deed and instrument in writing by the said H. V. Gavigan and R. H. Lawton, was a fictitious name, and the pretended name and signature of a person not then in existence; contrary to the form of the statute in such cases made and provided."

The information is based upon § 139 of the crimes act. This section reads:

" The false making, forging or counterfeiting of any instrument or writing being or purporting to be the act of another, by which any pecuniary demand or obligation, or any right, interest or claim to money, right in action or property, shall be or purport to be, or intended to be conveyed, transferred, created, increased, discharged, diminished, or in any manner affected, to which shall be affixed a fictitious name, or the name or pretended signature of any person not in existence, shall be deemed a forgery in the same degree and in the same manner as if the name so affixed was the name of a person in being, or purporting to be the signature of a person in existence." (Ch. 31, p. 347, Compiled Laws of 1879.)

Section 129 of the same chapter reads as follows:

" Every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit any instrument or writing, being or purporting to be the act of another, by which any pecuniary demand or obligation shall be or purport to be transferred, created, increased, discharged, conveyed or diminished, or by which any rights or property whatsoever shall be or purport to be transferred, conveyed, discharged, increased,

or in any manner affected, the falsely making, altering, forging or counterfeiting of which is not hereinbefore declared to be a forgery in some other degree, shall on conviction be adjudged guilty of forgery in the third degree." (Ch. 31, p. 345, Compiled Laws of 1879.)

The contention is that the fraudulent intent mentioned in § 129 is incorporated in § 139 by the words of reference in the latter part of the section. Section 129 makes the forging of the name of a person in being, "with intent to injure or defraud," forgery in the third degree. Section 139 makes the forging of "a fictitious name, or the name or signature of a person not in existence," a forgery in the same degree and in the same manner as if the name so affixed was the name of a person in being. Forgery is generally defined to be the fraudulent making or alteration of a writing to the prejudice of another man's right. The intent to defraud is the very essence of the crime. To constitute the offense, there must be a possibility of some person being defrauded by the injury. Where the effect of the forgery, if successful, would be to defraud some particular person, he should be named, if known. Forgery in third degree; information. If, however, the effect will not necessarily defraud a particular person, but will defraud some one, a general allegation of intent to defraud should be made. The question of intent is one for the jury to find from the evidence; but such intent, to be proved, must be alleged in the information. The nature of the offense of forgery is a species of false pretenses or fraud, and therefore the importance of setting forth the intent to defraud, and the name of the person intended to be defrauded, if such person is known.

Under the statute, there are three essential elements in this offense, namely: first, a writing apparently valid; second, a fraudulent intent on the part of the accused; and third, that the writing is false, or the name thereto fictitious. If §§ 129 and 139 are construed *in pari materia*, § 139 must be interpreted as if the words "with intent to injure or defraud" were incorporated therein. Even if §§ 129 and 139 are not to be construed together, we think the authorities clearly decide

that although § 139, describing the offense of forgery, is silent as to the intent with which the act was done, the information must charge a fraudulent intent. (Kelly's Criminal Law, § 728, p. 399; 2 Bish. Cr. Proc., § 441; Bish. Stat. Cr., §§ 132, 360, 364; 1 Bish. Cr. Proc., §§ 623–4; *Owen v. The State*, 5 Sneed, 493; *Fergus v. The State*, 6 Yerg. 345.)

It is a general proposition that it is sufficient to allege a statutory offense in an information in the words of the statute, but there are limitations on this general doctrine. Where the statute simply designates the offense, and does not in express terms name its constituent elements, the information must sometimes be expanded beyond the statutory terms. (*The State v. Foster*, 30 Kas. 365.) In the latter case the information not only alleged that Foster " unlawfully and feloniously did pass, utter, and publish as true, the falsely made, forged and counter-feited instrument of writing," but also alleged that the same was done " with intent then and there and thereby unlawfully to defraud J. R. Myers." The information in question does not charge that the fictitious name signed to the deed given to James Watson was signed with the intent to cheat or defraud James Watson or any other person. The information does not allege that James Watson, the grantee of the deed, paid any consideration therefor, or in any way relied upon such conveyance as a good and valid instrument. The evidence in the case clearly shows that James Watson was not defrauded, and that there was no intent on the part of the makers of the forged deed to defraud him.

Prior to March 17, 1883, the Kansas City, Fort Scott & Gulf Railroad Company was the owner of the land described in the forged instrument. On that date, the railroad company, undoubtedly at the instance of R. H. Lawton, deeded the land to Daniel Desmond, a person not in existence. Some one, in the name of Daniel Desmond, mortgaged this land April 6, 1883, to Smedley Darlington, for $1,100, and at the same time executed another mortgage to H. C. Jones and J. E. Maxwell for $165. These mortgages were subsequently satisfied, and on April 22, 1884, a deed in the name of Daniel Desmond

was executed to James Watson. The consideration named therein was $5,500; but there was an understanding between Watson and Lawton that Watson was to pay nothing for the deed, and he never paid anything for the same. Watson has resided in Cherokee county for ten or twelve years, and was well acquainted with the land described in the deed before he accepted the same. Subsequently, he made a mortgage to the Western Farm Mortgage Company, of Lawrence, for $1,800, and after the proceeds of this mortgage had been used to pay off the prior mortgages, taxes, etc., the remainder of the money was divided between himself, Gavigan, and Lawton. This remainder was $435.55, and was obtained by Watson in a draft from the mortgage company. It is difficult to tell exactly how he disposed of this money, but he claims he only received from one to two hundred dollars, the remainder going to Gavigan and Lawton. If Watson paid any of the money received by him upon the draft, to Gavigan or Lawton, he did so voluntarily, to carry out his agreement. The mortgage executed to the Western Farm Mortgage Company was the act of Watson, and although there may have been a conspiracy entered into between Watson, Lawton and others to defraud the Western Farm Mortgage Company, the offense charged in the information does not embrace the fraud against that company. If it is intended to punish any parties to that crime, a different information must be prepared and filed.

This case is very different from *The State v. McGaffin*, just decided. In the information in that case the words "malice aforethought" were omitted. But the language employed in charging the offense was the full equivalent of a statement that the killing was done intentionally and with malice aforethought, and the name of the person shot and killed was specifically stated. In this case no particular person is alleged to have been defrauded, nor is there any general allegation of intent to defraud.

The judgment and sentence of the district court will be reversed, and the appellant discharged.

All the Justices concurring.